**Juan Aguerto AQUINO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–85–527–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 8, 1986.

748

David Mendoza, Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr., Carol G. Davies, Houston, for appellee.

Before DRAUGHN, ELLIS and JUNELL, JJ.

## OPINION

ELLIS, Justice.

Appellant, Juan Aguerto Aquino, appeals from a judgment of conviction for the offense of murder. Appellant entered a plea of not guilty. The jury found appellant guilty and assessed punishment at confinement in the Texas Department of Corrections for 20 years and a fine of five thousand dollars ($5,000). We affirm.

Appellant brings eight grounds of error whereby he alleges that the trial court erred in: (1) failing to charge the jury on the lesser included offense of voluntary manslaughter; (2) finding the evidence sufficient to support a guilty verdict in that evidence of intent to kill was insufficient; (3) refusing appellant's request to discover the prior criminal record of the deceased; (4) refusing to permit defense counsel to inquire of the jury panel whether or not they could consider the entire range of punishment; (5) refusing defense counsel's request to question Juror # 13, Mr. Foster, with regard to punishment, with a view to disqualification; (6) denying appellant an additional peremptory challenge because the erroneous inclusion of Juror # 13, Jodie Wayne Foster, required appellant to use an extra peremptory challenge; (7) permitting witness Elizabeth Merkt to testify regarding a prior suicide attempt of appellant when he had been mistreated by someone else; and (8) permitting witness Jorge Velez to testify that appellant told him he tried to kill himself because a lady tried to leave him.

In order to adequately address the sufficiency of the evidence questions presented by the second ground of error, a detailed factual summary is necessary.

Appellant, a merchant seaman, first met Virginia Davis (the deceased) in September, 1984 in New Orleans. Davis operated a travel agency in Houston. A romantic relationship developed between them. Appellant wrote love letters from New Orleans to Davis in Spanish and Davis' office manager, Raymond Carrizal, translated these letters. Appellant spoke very little English. In November, 1984, appellant came to Houston and moved in with Davis. While in Houston appellant secured employment.

Appellant spent his days cooking and fixing up their apartment. He would visit the deceased's office where he conversed with other Spanish speaking employees.

Elizabeth Merkt, an employee of Virginia Davis, testified that the appellant became upset on occasions when Davis received phone calls from other men, even though the calls pertained to Davis' business. Appellant told Merkt that, "he was true to Davis one hundred percent and he expected the same thing back."

On the morning of December 10, 1984, Merkt testified that Davis was visibly upset when she came to work. After a long conversation, Merkt advised Davis to make appellant move out of Davis' home. Later on December 10, 1984, appellant came to Davis' office. During this visit, appellant told her he was being mistreated by Davis, saying he felt bad about being put out of Davis' house because he did not have any money.

Mary Garza, also employed by Davis' travel agency, testified that on December 10, appellant came to the office and spoke with employees in an angry tone. Appellant complained that Davis "was kicking him out" and he "had no where to go." Appellant appeared particularly upset because he suspected that Davis had gone off for several hours with a Hispanic car salesman while appellant waited at the dealership.

Additionally, on December 10, Ms. Davis asked Raymond Carrizal, her business partner, to take the appellant to the seafarers' union local in Houston to seek employment. At the union local, the official issued appellant a new card from the Houston local, but he was still unable to secure a job. Distressed by the situation, appellant cried over his failure to obtain work. Consequently, Carrizal took the appellant to the Chicano Family Center and attempted to obtain employment for him through contacts there, but was unsuccessful. Appearing distraught, appellant commented that he "felt like killing himself." He mentioned to Carrizal that Ms. Davis wanted him out of the house. The following day, on December 11, 1984, Ms. Davis' son, Merit Davis, discovered the bodies of his mother and the appellant. Merit testified that when he first discovered the bodies, his mother's nude body was on top of the appellant, half on and half off of the bed.

The State's theory of the case was that the romance turned to hatred and violence.

The State's theory of an intentional killing also draws support from the nature of Davis' wounds. The fatal wound was to the neck which severed Davis' jugular vein. Davis also had numerous wounds that were less severe, including several on her hands. Dr. Espinola, a Harris County medical examiner, characterized these as "defensive" wounds, which might occur if Davis used her bare hand as a shield against the knife. A multitude of defensive wounds indicated a purposeful, intentional attack by an assailant.

The State also asserts that appellant altered the scene of the crime to facilitate his own self-serving account of what occurred.

Appellant, in his second ground of error, alleges that the evidence was insufficient to show that he had the intent to kill Virginia Davis. At trial, appellant testified that Davis made an unprovoked attack on him, in the middle of the night, with a knife. He had a struggle with Davis and was able to turn her hand to avoid his own death. In the course of the struggle appellant said Davis' neck was cut. The jury was not required to accept this testimony as true. Instead, the totality of the evidence must be considered to determine whether there was evidence to support the jury's finding that the appellant had the requisite intent to kill.

In reviewing the sufficiency of the evidence to sustain a conviction, we must ask and answer the question "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is clear from the *Jackson* opinion that a trier of fact is entitled to draw reasonable inferences and conclusions from the direct and circumstantial evidence. *See also Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App. 1985). Thus, the sole issue presented in the case at bar is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that appellant intentionally killed Virginia Davis.

In addition to the testimony by some of Davis' employees regarding appellant's distress over not being able to secure employment and over being ousted from Ms. Davis' townhouse, we will look at the physical evidence that was presented to the jury.

Dr. Aurelio Espinola, Harris County Deputy Chief Medical Examiner, testified that the autopsy showed that the cause of Ms. Davis' death was a stab wound to the neck which cut Davis' internal jugular vein. The neck wound was described as wing-shaped, normally caused by the knife twisting or the victim moving. Further testimony by Dr. Espinola revealed that on the right hand of the deceased, the middle, fourth and fifth fingers were cut and broken. There was also a cut on the wrist of the deceased, cutting tendons which loosened the third, fourth, and fifth fingers' ability to grip. Dr. Espinola characterized these as defensive wounds which might occur if Davis used her bare hand as a shield against the knife.

When discovered at the scene, a knife was found in the deceased's hand. There was extensive testimony concerning this issue. The paramedic at the scene testified to "sliding the body of the deceased off appellant"; and the officers who later arrived found the knife still in deceased's right hand. However, due to the damage to deceased's right hand Dr. Espinola testified that he did not believe the knife was in her hand when she died. Dr. Espinola testified further that a hand of a dead person with ligaments cut on three fingers could not grasp the handle of a knife tightly. Espinola testified that the finger that wasn't affected could clutch but in a mild way, but not tightly.

Dr. Espinola also testified that the location and character of the lividity pattern suggested that Davis was lying on her back when she was stabbed leading for a possible inference that Davis' body had to be repositioned after death for her to be found lying prone atop the appellant.

The paramedics who treated the appellant testified that the appellant's blood pressure indicated a "very stable" condition. Appellant was not considered to be in a life-threatening situation. The wound around appellant's neck was only superficial.

The State's position was that the appellant had a strong enough will to inflict the wound on himself as part of a coverup of his crime. In support of this theory, the State elicited testimony from two employees in Davis' office, Elizabeth Merkt and Jorge Velez, that the appellant had told them about wounding himself with a knife in a past suicide attempt because a lady friend left him.

Upon reviewing the record we find that there is evidence that tends to portray appellant as unstable, and still other evidence leaves room for inference to be drawn by the jury that appellant may have staged the position of Davis' body and the knife.

■ This court is not free to reevaluate the weight and credibility of the evidence assessed by the jury. *Lawrence v. State*, 700 S.W.2d 208 (Tex.Crim.App.1985). We find that there was sufficient evidence of appellant's intent to kill and overrule appellant's second ground of error.

Appellant, in his first ground of error, alleges the trial court erred in refusing his requested charge for an instruction on the lesser included offense of voluntary manslaughter.

Under the Texas Penal Code § 19.04(a) (Vernon 1974) voluntary manslaughter occurs when a person:

causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

■ In determining whether a defendant is entitled to a charge on a lesser included offense we will consider all the evidence presented at trial. *Lugo v. State*, 667 S.W.2d 144 (Tex.Crim.App.1984); *Aguilar v. State*, 682 S.W.2d 556 (Tex.Crim.

App.1985). The Texas Court of Criminal Appeals adopted the two-prong test to determine whether a charge on the lesser included offense is required. *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981). The first prong requires that the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.

■ Appellant testified that the deceased was astride him with a knife when he awoke and that she stabbed him. In the struggle to get up, appellant grabbed the deceased's hands and she stabbed herself in the neck. Asked if he intended to kill Ms. Davis or cause her serious bodily injury, appellant replied "I had no intentions of doing her any harm." Appellant's testimony denies the existence of an essential element of both murder and voluntary manslaughter, the intent to kill. We find that appellant is not entitled to a charge on the lesser included offense of voluntary manslaughter because he failed to meet the second prong of *Royster*, that if he is guilty, he is guilty of only voluntary manslaughter. Appellant's first ground of error is overruled.

■ Appellant, in his third ground of error, alleges that the trial court erred in denying discovery of the deceased's prior criminal history. Appellant filed a motion for discovery which included a request for the prior criminal record of the deceased. The court denied this request. Appellant has failed to present, by a bill of exception or other means, any evidence to indicate the State misled the appellant and the court in asserting, at the motion hearing, that the State was not aware of any final convictions of the deceased having to do with any assaultive conduct or a violent crime. In the absence of such evidence, appellant has failed to preserve error. *Brem v. State*, 571 S.W.2d 314 (Tex.Crim.App.1978); *Martinez v. State*, 507 S.W.2d 223 (Tex.Crim.App.1974). Appellant's third ground of error is overruled.

■ Appellant, in his fourth ground of error, alleges that the trial court erred in limiting appellant's voir dire on punishment. During voir dire, defense counsel put the following question to the jury venire:

Does anyone here, can everyone tell me man to man, woman to man that if you find a defendant guilty of murder at the end of the case and you have to decide punishment, if you find the defendant used a knife to murder, intentionally and knowingly kill the complainant in this case with a knife that you could consider the minimum of five years probation ... (This was a statement of what the State's case would be).

The prosecutor's objection was sustained, then defense counsel rephrased the question to the proper form. Voir dire may not include details of a particular offense. *White v. State,* 629 S.W.2d 701 (Tex.Crim. App.1981). The trial judge did not abuse his discretion in refusing to let the appellant ask a hypothetical question that was based on the facts peculiar to the case on trial. Appellant's fourth ground of error is overruled.

Appellant, in his fifth and sixth grounds of error, alleges that the trial court erred in refusing to allow cross-examination of a juror on his ability to consider probation for murder and the refusal of an additional peremptory challenge. Venire member, Jodie Foster, indicated that he could not consider the minimum punishment of five years probation in a murder case. When Foster was questioned at the bench, he again stated that he could not consider five years probation, and he affirmed that it made no difference what the facts were. The judge then asked, "Mercy killing or anything?" Foster responded, "That's one possibility I didn't consider." The judge went on to explain the situation to Foster, stating "You can't zero in on any particular fact situation." The question was whether Foster could consider the minimum punishment in a case which Foster considered proper. Pressed for a better answer, Foster finally stated, "I would say the facts

would dictate, you know, what the outcome would be."

Finally, the judge asked Foster specifically:

THE COURT: Are you telling me if you decide it is a proper case that you could consider five years probation for the offense of murder, intentionally and knowingly taking another human life.

FOSTER: Right. That's what I'm saying

Defense counsel then requested permission to question Foster, but the request was denied. Appellant, in his fifth ground of error, claims the trial court erred in denying him the opportunity to further question Foster.

Defense counsel then struck Foster through a peremptory challenge. Appellant, in his sixth ground of error, claims that the trial court should have granted an additional peremptory challenge to compensate for the one used on Foster. Appellant sought no bill of exceptions on the questions he would have asked Mr. Foster. Appellant has failed to preserve error. We overrule appellant's fifth ground of error.

■ Finally, we find that the trial court did not err in refusing appellant an additional peremptory challenge. In *Thomas v. State,* 701 S.W.2d 653 (Tex.Crim.App.1985), the Court held in the absence of wrongdoing on the Court's part no abuse of discretion will be found when the court overrules appellant's request for additional peremptory challenges after appellant has exhausted those accorded him by statute.

In our case there is no error in the refusal of the extra peremptory challenge unless the court erred in (1) overruling appellant's challenge for cause to juror, Foster, and (2) appellant shows he was forced to take an unacceptable juror for want of the peremptory challenge used on juror Foster. Appellant has failed to make this showing. Appellant's sixth ground of error is overruled.

■ Appellant, in his seventh and eighth grounds of error, alleges that the trial

court should have sustained objections to testimony from two witnesses, Elizabeth Merkt and Jorge Velez, regarding the appellant's claim of a previous suicide attempt because the testimony was immaterial and irrelevant. Merkt testified that the appellant had told her he had "tried to do something to himself" after he felt he had been wronged by another woman. Velez testified that the appellant showed Velez a scar on the appellant's chest and that the appellant told Velez he had tried to kill himself with a knife after a woman he was "involved with" tried to break off their relationship. The evidence was offered to show two things which were important to the State's case: (1) appellant's potential violence when jilted by a woman, and (2) appellant's capability of inflicting a serious wound on himself with a knife. In light of the State's case, the testimony of both witnesses was material and relevant. The trial court did not err in overruling appellant's objection.

 Appellant's objections made at trial to Jorge Velez's testimony do not correspond to the contention now raised for the first time on appeal. During Velez's testimony, appellant made five objections. Three objections were that Velez's answers were nonresponsive and one objection complained that the testimony showed an extraneous offense. The fifth objection was to "the narrative form of the question," which was sustained. None of the objections challenged the relevancy of his testimony which appellant now claims on appeal, that the testimony was immaterial and irrelevant. An error presented on appeal must be the same as the objection raised at trial. *Vanderbilt v. State*, 629 S.W.2d 709, 721 (Tex.Crim.App.1981). Ground of error eight was not properly preserved for review.

Appellant's seventh and eighth grounds of error are overruled.

Accordingly, the judgment of the trial court is affirmed.