Brian Daniel BENEFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–01219–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 1, 1999.

Kirk J. Oncken, Houston, for appellant.

John B. Holmes, Houston, Kelly Ann Smith, Houston, for appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

NUCHIA, J.

Brian Daniel Benefield, the appellant, appeals his conviction of murder. We affirm.

### A. *Facts*

The appellant is a diagnosed paranoid schizophrenic. The appellant hears voices, hallucinates, and believes everybody talks about him. According to him, sometimes he thinks the voices are real, and sometimes he does what the voices tell him to do. The appellant has been suicidal at times.

In 1995, he was hospitalized in the Harris County Psychiatric Center. On September 15, 1995, he was released to live with his father, Clifford Benefield. The appellant continued to receive treatment and medication for his illness. He was put on Stelazine, but testified that each time he received the medication, he ended up not taking it because he felt he could deal with his problem by himself.

On September 22, 1995, the appellant's sister, Cheryl Cook, called her father sometime after noon. While on the phone, Cheryl heard her father speak to someone, and learned that her brother, the appellant, was standing beside him. She dropped the phone into her lap, and when she retrieved it, her father was no longer on the line. She heard only a rustling sound. As she continued to listen, she heard her father scream, "No! No! No, Brian, no!" Her father repeated his plea several times, but did not return to the line. Cheryl immediately dialed 911. After emergency personnel assured Cheryl that help was on the way to her father's house, she called her father again. The appellant answered the phone. When she asked where her father was, he said, "He is laying in the yard dead, I stabbed him."

Once the police arrived at the scene, the appellant was arrested and taken to the Houston Police Department's Homicide Division by Officer Green. At the police station, the appellant was interviewed by Officer Brown, to whom he made a videotaped confession in which he admitted stabbing his father six times in the upper chest and abdomen.

Before trial, the appellant filed a motion to suppress the confession, claiming it was not made voluntarily, and the trial court conducted a pre-trial hearing on the matter. At the hearing, the trial court heard testimony from the appellant, Officer Brown, and two expert witnesses, both clinical psychologists, on behalf of the appellant and the State respectively. After hearing this testimony, the trial court denied the appellant's motion.

The jury convicted the appellant of murder and assessed punishment at life imprisonment.

### B. *Voluntariness of confession*

In point of error one, the appellant claims the trial court erred in finding his confession was made voluntarily. The State argues that the appellant's confession was properly admitted. We agree with the State.

The trial court is the sole judge of the witnesses' credibility at pretrial hearings, and, unless there is an abuse of discretion, the trial court's findings on voluntariness of a confession will not be disturbed. *Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App.1994); *Long v. State*, 823 S.W.2d 259, 277–78 (Tex.Crim.App. 1991). If the trial court's findings of fact are supported by the record, this Court's only inquiry will be whether the trial court properly applied the law to the facts. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Crim.App.1986) (citing *Johnson v. State*, 698 S.W.2d 154, 159 (Tex.Crim.App. 1985); *Snow v. State*, 721 S.W.2d 943, 946 (Tex.App.—Houston [1st Dist] 1986, no pet.)). Because the trial court is the sole trier of fact at a hearing on a motion to

suppress, we are not at liberty to disturb any finding that is supported by the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980); *Snow,* 721 S.W.2d at 946.

At the hearing, the appellant testified that on the day of the murder, he was placed in the police car, taken to the police station, and talked to a police officer. He testified he was moved from one room at the police station to an interrogation room upstairs. The appellant said he thought it was a detective who took him to the interrogation room. He stated the detective offered him coffee and came in and out of the room about 12 times trying to get him to talk. The appellant said the detective read him his *Miranda* rights. The appellant said he refused to talk to the detective and was taken downstairs into a parking garage.

The appellant said there was a van in the parking garage, and he was told the van was going to jail and he was going in it. He stated he remembered the van was full of young Spanish or young Oriental people, and one of them said something about killing him. He also said another person in the van said to him, in a sarcastic manner, "Don't be afraid." The appellant said at that point, he did not want to get in the van because he thought he would be killed. The appellant stated this upset him more than it would an average person because he was "schizophrenic," "naturally paranoid," and at the time he was having a "bad episode." The appellant said the detective told him he would not have to go into the van if he told the detective what happened, and later he told the appellant he would be placed in a cell by himself and would get help for his problem.

Officer Brown testified that when he arrived at the scene of the murder, the appellant had been arrested by Officer Green and placed in the back seat of a patrol car. Officer Brown obtained the appellant's consent to conduct a search, and then asked Officer Green to take the appellant to the police station. Officer Brown said Officer Green left the scene with the appellant at 2:20 p.m. Officer Brown said when he arrived at the station at 3:25 p.m., the appellant was in interview room three. Officer Brown stated he moved the appellant from interview room three to interview room two, which is inside some inner offices. He said he moved him because interview room two was by his desk, where Officer Brown could keep an eye on the appellant as he prepared for the interview. He said he would have been able to see if anyone came into or left the room.

Officer Brown testified he gave the appellant coffee at 3:35 p.m. He said he returned to the interview room at 4:00 p.m. and read the appellant his statutory warnings. Officer Brown said after he read the appellant each of his rights, he asked the appellant whether he understood them and the appellant indicated that he did. Officer Brown said he gave the appellant his statutory warnings again at 6:40 p.m., and the videotaped interview began. Officer Brown testified he did not take the appellant out of the interview room or anywhere else in the police station, nor did he have any knowledge that anyone else had done so, except for when the appellant was booked and taken to jail at 7:44 p.m. Officer Brown said he did not promise to give the appellant anything or to do anything for him in exchange for an interview.

The appellant relies on *Smith v. State,* 547 S.W.2d 6, 8 (Tex.Crim.App.1977), to argue his confession was inadmissible as a matter of law because the State did not controvert the appellant's allegations of coercion at the hearing on voluntariness.[1] Specifically, the appellant says that because he was in Officer Green's custody for

---

1. In *Smith,* the defendant's confession was held inadmissible as a matter of law because the officers who allegedly beat the defendant did not testify to controvert the allegations of involuntariness.

at least an hour before Officer Brown's arrival at the station, and because Officer Green did not testify at the hearing, the appellant's confession was inadmissible as a matter of law. The appellant argues Officer Green's testimony was necessary to controvert his allegations. However, the appellant testified he believed the officer who was with him in the room when he gave the confession was the same officer who took him down to the garage. This would be Officer Brown, because Officer Brown took his confession. Officer Brown did testify. Officer Green's testimony was, therefore, not necessary to controvert the appellant's allegations.

The trial court's finding that the confession was made voluntarily is supported by the record. Therefore, the trial court did not abuse its discretion. *See Green,* 615 S.W.2d at 707; *Snow,* 721 S.W.2d at 946.

We overrule point of error one.

C. *Voir dire examination*

■ In point of error two, the appellant argues the trial court erred by improperly limiting the voir dire examination of the venire. The appellant claims this error prevented the intelligent use of peremptory challenges by trial counsel. The State argues the appellant's questions improperly sought to commit jurors to a particular course of reasoning and, therefore, the trial court did not err. We agree with the State.

■ The right to be represented by counsel, guaranteed by Article 1, Section 10, of the Texas Constitution, includes the right of counsel to question the members of the jury panel to intelligently exercise peremptory challenges. *Shipley v. State,* 790 S.W.2d 604, 608 (Tex.Crim.App.1990). A trial judge is given wide discretion to control voir dire; however, permissible areas of questioning the panel to exercise peremptory challenges are broad and cannot be unnecessarily limited. *Id.* The trial court's decision to restrict voir dire may only be reviewed to determine whether the restriction constitutes an abuse of discre-

tion. *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App.1988). Discretion is abused when a proper question about a proper area of inquiry is prohibited. *Id.* If the question is proper, an answer denied from the veniremembers prevents intelligent use of the peremptory challenges and harm is shown. *Shipley,* 790 S.W.2d at 609 (citing *Allridge,* 762 S.W.2d at 163). The denial of a proper question to the venire is always reversible error. *Maddux v. State,* 862 S.W.2d 590, 592 (Tex. Crim.App.1993). Thus, the propriety of the question asked by the appellant's counsel is determinative.

■ A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Shipley,* 790 S.W.2d at 609. The Court of Criminal Appeals also has held questions seeking to elicit bias or prejudice from a prospective juror are proper. *Maddux,* 862 S.W.2d at 592 (holding trial court abused its discretion by refusing to allow questions regarding victim's status as a child); *see also Nunfio v. State,* 808 S.W.2d 482, 484–85 (Tex.Crim. App.1991) (holding the trial court abused its discretion by refusing to allow a question seeking to determine bias or prejudice in favor of the victim because she was a nun).

■ Improper questions include asking a venire member to describe the type of situations that result in the death penalty, *Allridge,* 762 S.W.2d at 163–64; asking a potential juror if he is unable to consider life imprisonment in a hypothetical situation that was an accurate statement of the State's case, *White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App.1981); and asking a member of the venire whether he would consider probation where a knife was used to commit the murder, *Aquino v. State,* 710 S.W.2d 747, 752 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd).

The State objected to two questions asked by counsel for the appellant, and the trial court sustained the objections on the grounds that the questions sought to com-

mit the prospective jurors to specific facts. The relevant portion of the record on voir dire is as follows:

Defense counsel: If you believe somebody, person you found guilty of murder had mental illness but you didn't think we met the third prong, was not insane but was mentally ill, would that factor at the punishment stage of trial, would that factor cause you to not be able to consider five years probation for that individual?

Juror: To consider it?

Defense counsel: Sir?

Juror: To consider it?

Defense counsel: To consider, yeah. In other words, keep an open mind on the full range of punishment. Nobody on the front row has a problem with that? All right. The other way—number 5. Okay.

Juror: Yes, I would, because I think, if a person has that serious mental defect or disease that they would murder one time and not know it, that they would do that again, and I would not want that person on probation.

Defense counsel: So you could not consider probation in that case?

Juror: Yes

Defense counsel: Number two.

Juror: I have a problem with that, too.

Defense counsel: When you say you have a problem, are you telling me you could not consider it?

Juror: I agree with what that lady said, . . .

ADA: I object. He is trying to get the panel members to commit to a specific set of facts, specific set of hypotheticals. All she has to be able to do is consider in some fact situation somewhere in the universe she'd consider probation based on nonspecific facts.

  \*  \*  \*  \*  \*  \*

Court: Sustained.

Defense counsel: Well, my question specifically is, for the record, if you find a hypothetical case that somebody is mentally ill, would that prevent you from considering the minimum range of punishment in a murder case where the person has no prior convictions and is probation eligible.

ADA: Objection, Your Honor.

Court: Sustained.

The appellant's voir dire question improperly sought an answer committing the juror to a specific set of facts that obviously applied to the appellant in this case: Could they consider probation if faced with a mentally ill defendant who had been convicted of murder and had no other prior convictions. This question was not an attempt to explain the law to the venire. Therefore, the trial court did not abuse its discretion by prohibiting the question. *See Penry v. State*, 903 S.W.2d 715, 739–40 (Tex.Crim.App.1995) (holding whether a juror could assess life imprisonment in a specific fact scenario constituting capital murder was an improper commitment to facts); *White*, 629 S.W.2d at 706 (holding whether a prospective juror could assess the minimum punishment of five years under certain described facts was an improper question).

We overrule point of error two.

D. *Prosecutor's comments during voir dire*

■ In point of error three, the appellant argues the trial court denied him a fair trial by overruling his objections to the prosecutor's comments on voir dire referencing other cases involving the insanity defense. Specifically, the appellant complains about the State's reference during voir dire to two other notable cases, the Dahmer and DuPont cases, where the insanity defense was employed.

The State's questions to the venire were proper because they were used to explain the application of the law of insanity. *See Cuevas v. State*, 742 S.W.2d 331, 336, n. 6 (Tex.Crim.App.1987) (stating it is proper to use hypothetical fact situations to ex-

plain the application of the law). The relevant portion of the record is as follows:

ADA: Have you all ever heard of Jeffrey Dahmer? Let me have a show of hands. Be hard not to ...., but the point is Jeffrey Dahmer was tried for cutting up people, drilling holes in their heads.

Defense counsel: Excuse me, Judge. I'll object to any reference to another case. Doesn't have any connection to this case.

Court: Overruled.

ADA: Putting them in his refrigerator, putting them in barrels. I mean, I beg to ask anybody if they ever heard of a sicker case than that. Now, if I were to ask you the question do you think Jeffrey Dahmer was crazy. Let me see a show of hands.

Defense counsel: Again, I object to any reference to the Dahmer case. Ask for a running objection to this continued line of questioning.

Court: Overruled.

Defense counsel: Like to have a ruling on my request.

Court: Granted.

ADA: We get a big show of hands on that. I feel confident that we're all in agreement that Jeffrey Dahmer suffered from some very, very severe mental disease or defect, but was Jeffrey Dahmer insane under the law? No, he was not. He was found guilty of those murders because at the time he committed all those murders what? He knew it was wrong. How did he know it was wrong? He hid the things away, he wouldn't let people in. He wasn't advertising it, but was he insane? No. So when you talk about Jeffrey Dahmer, was he competent to stand trial? Yes or no?

Jurors: Yes.

ADA: Was he insane?

Jurors: No.

ADA: Did he have mental disease or defect?

Jurors: Yes.

ADA: You betcha. Is there anybody here hasn't heard of the Dupont case? Just got more money than the good Lord himself...

Defense counsel: Again I object to reference to the Dupont case for the same reason

Court: Overruled.

Defense counsel: Like to have a running objection...

Court: Granted.

The ADA used the Dahmer case to explain the law on insanity and the Dupont case to explain competency to stand trial. *See Cuevas,* 742 S.W.2d at 336, n. 6. The trial court did not abuse its discretion.

We overrule point of error three.

### E. *Improper jury argument*

■ In point of error four, the appellant argues the trial court erred in overruling his objections to the State's jury argument during the punishment stage of trial. The appellant claims the State's comments were improper because they went outside the evidence and asserted the appellant had a violent temperament and was a threat to others. The State claims its argument was a proper plea for law enforcement.

During the State's jury argument at the trial's punishment stage, the State argued:

[The appellant] had a problem with his father, so he stabbed him six times in the chest. What's going to be the next problem? Somebody that takes the last apple? ... What's going to be the next problem? Somebody pulling out in the parking lot in front of him? ... What does it matter if [the appellant] has never in his life done anything violent until this point? That is not mitigating. That evidence is damning because as he grows older, he obviously is becoming more violent....

Why do you send him to prison for life? Because this man can never be on the streets again. This man can't be at the

supermarket. This man can't be in the parking lot to get mad again.

When you look at him, even though he sits there with his head down, looks like he's asleep all the time, you get a chance to look at him and you know what he is capable of. And I ask you this question: Are you afraid of him? ...

As you know and as you've told us, you told everybody, this guy was not insane. This man is mean. And he's angry. And you cannot give him another opportunity to be out with the people in this county, this state, in this country. The people that are out there that are afraid depend on you, their 12—

Throughout the State's argument, the appellant objected by arguing this was outside the record and designed to inflame the minds of the jury. The trial court overruled each objection.

■ To be permissible, jury argument must fall within one of four general areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement. *Richardson v. State,* 879 S.W.2d 874, 881 (Tex.Crim. App.1993); *Sanders v. State,* 787 S.W.2d 435, 441 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

The State's comments did not go outside the record, nor was it an improper plea for law enforcement. The appellant had been convicted of violently stabbing his father six times in the chest. The appellant's sister Cheryl testified to threats the appellant had made to her before the murder, and on several occasions he lunged toward her in anger, making her believe he would hit her. Asking the jury what the appellant might do next if he was not sent to prison for a considerable time was not outside the bounds of permissible jury argument. *See Murray v. State,* 861 S.W.2d 47, 55 (Tex.App.—Texarkana 1993, pet. ref'd) (holding the State's argument that the best way to protect the community was to give the defendant substantial time in prison was a proper plea for law enforcement).

We overrule point of error four.

We affirm the trial court's judgment.

Justice O'CONNOR dissenting.

O'CONNOR, Justice, dissenting.

I dissent. I would reverse and remand for a new trial because I agree with the appellant on two of the issues presented for review.

### *Comparison to Dahmer & Dupont*

In point of error three, the appellant claims he was denied a fair trial because the trial court permitted the assistant district attorney (ADA) to discuss the Dahmer and DuPont cases during voir dire, two notorious cases involving the insanity defense and incompetency. The appellant argues the ADA's comments were a deliberate attempt to undermine the impartiality of the jury, rather than a test of their qualifications on the insanity defense. For a complete recitation of the ADA's comments, see majority opinion, section D.

The State argues that the ADA's questions to the venire were proper. The State relies on *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App.1985), arguing that the ADA's questions were proper because the State was entitled to question the venire on their understanding of how they might give effect to mitigating evidence, or on what is mitigating, if at all, about insanity, mental illness, mental defect, and other elements of the anticipated defense. I disagree that *Smith* applies to this case.

In *Smith,* the trial court denied the defendant's request to ask four questions during voir dire. The appellate court held three of the four questions were proper and should have been allowed. *Smith,* 703 S.W.2d at 645. The defendant should have been allowed to question the venire members on the materials they had read concerning the defense of insanity, their exposure to any pre-trial publicity about

that case, and their thoughts on the purposes of punishment. *Id.* However, the Court of Criminal Appeals held the question regarding the venire members' "thoughts about the defense of insanity" was improper because it did not seek particular information from a particular member. *Id.* Instead, the court found it presented a general topic for discussion. *Id.*

I do not believe the ADA's discussion of the Dahmer and DuPont cases was an attempt to question the venire members about the mitigating effect of the insanity defense. Unlike in the *Smith* case, the ADA was not attempting to determine what the venire members knew about the insanity defense, nor was the ADA attempting to determine bias or prejudice. *See Smith,* 703 S.W.2d at 643; *see also Maddux v. State,* 862 S.W.2d 590, 592 (Tex.Crim.App.1993); *Nunfio v. State,* 808 S.W.2d 482, 484–85 (Tex.Crim.App.1991). The ADA was not asking about the insanity defense as it related to the case against the appellant, and the ADA was not attempting to ask or direct restrictive questions of a particular juror to test the juror's qualifications.[1] *See* Tex.Code Crim.P. art. 35.20. Instead, the ADA initiated a general discussion when he asked, "Have you all ever heard of Jeffrey Dahmer? Let me have a show of hands. Be hard not to . . . ."

The ADA's references went beyond the point of questioning and assessing the relative desirability of the venire members. The ADA went so far as to inject his opinion of the Dahmer case when he said, "I beg to ask anybody if they ever heard of a sicker case than that." This, too, was improper. *See Johnson v. State,* 698 S.W.2d 154, 167 (Tex.Crim.App.1985) (holding it was improper for prosecutor to inject personal opinion in statements to the jury in closing argument).

Generally, the error in an improper statement by a prosecutor can be corrected by an instruction to disregard, thus

obviating the need for a mistrial. *Swallow v. State,* 829 S.W.2d 223, 226–27 (Tex. Crim.App.1992). In extreme cases, the improper statement is calculated to inflame the minds of the jury, or so indelibly ingrained in their minds that it is not susceptible to withdrawal or retraction by an instruction to disregard. *Id.* This is such a case.

I agree with the appellant that the sole purpose of the ADA's comment was to implant in the minds of the jury a comparison between Dahmer and the appellant—if someone was as sick as Dahmer was not insane under the law, then surely the appellant was not insane. I would conclude the ADA's improper references to Dahmer and DuPont, and the ADA's injection of his opinion about them, were so prejudicial and calculated to inflame the minds of the jury that they were not susceptible to withdrawal or retraction by an instruction to disregard.

### Limitation on Voir Dire

In point of error two, the appellant argues the trial court improperly limited the examination of the venire. The appellant claims this error prevented him from intelligently using his peremptory challenges. The majority agrees with the State's argument, that the appellant's questions improperly sought to commit jurors to a particular course of reasoning, and, therefore, the trial court did not err. For a complete recitation of the questions asked by the appellant, see the majority opinion, section C.

I would hold that the appellant's question was proper, and, therefore, should have been allowed. The question posed by appellant's counsel sought to determine bias or prejudice against the appellant because of his mental illness. Both the ADA and the appellant's counsel spent considerable time discussing insanity and mental illness. During voir dire, the ADA admitted the appellant was mentally ill. The

---

1. In fact, the jurors responded in unison.

record reflects that the appellant's only defense to the State's murder allegation was the insanity defense. Accordingly, the appellant was entitled to question the venire on how they might give effect to mitigating evidence of insanity, mental illness, mental defect, and other elements of the anticipated defense. *See Shipley v. State*, 790 S.W.2d 604, 609 (Tex.Crim.App.1990). The appellant should have been allowed to question the prospective jurors about their feelings on punishment and whether they could consider probation. *See Mathis v. State*, 576 S.W.2d 835, 839 (Tex.Crim.App. 1979) (holding the trial court abused its discretion by refusing to allow a question to prospective jurors on their feelings against recommending probation as punishment in a murder case).

Although the majority acknowledges that questions seeking to determine bias or prejudice are proper, it goes on to find that the appellant's question sought to commit the jurors to a specific set of facts. I disagree. The only facts specific to the case that were part of the question were the facts that the appellant was mentally ill, he had no prior convictions, and he was eligible for probation. The facts injected in the question the appellant sought to ask are distinguishable from the facts of the improper questions in the cases upon which the majority relies. In those cases, the facts were a description of the offense with which the defendant was charged. *See, e.g., Penry v. State*, 903 S.W.2d 715, 739–40 (Tex.Crim.App.1995) (holding whether a juror could assess life imprisonment in a specific fact scenario constituting capital murder was an improper commitment to facts); *Allridge v. State*, 762 S.W.2d 146, 163–64 (Tex.Crim.App.1988) (asking a potential juror if he is unable to consider life imprisonment in a hypothetical situation that was an accurate statement of the State's case); *White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981) (asking a member of the venire whether he could consider probation where a knife was used to commit the murder); *Aquino v. State*, 710 S.W.2d 747, 752 (Tex.App.—

Houston [14th Dist.] 1986, pet. ref'd) (asking a potential juror whether he would consider probation where a knife was used to commit the murder).

Here, the facts injected by defense counsel were not a description of the offense. The appellant's counsel asked a proper question to determine bias or prejudice against the appellant based on his mental illness. I would hold the trial court abused its discretion by refusing to allow a proper question. *See Maddux*, 862 S.W.2d at 592 (holding the denial of a proper question is always reversible error).