parker v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-265-CR

JIMMY EDWARD PARKER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury convicted Appellant Jimmy Edward Parker of three counts of aggravated sexual assault and assessed his punishment at life imprisonment for count one and ninety-nine years and a $10,000 fine for each of counts two and three.  The trial court entered judgment accordingly and ordered that the punishment assessed for counts two and three commence upon the completion of the sentence assessed for count one.  In five points, Appellant appeals his conviction.  We affirm.

II. Sufficiency of the Evidence

In his first point, Appellant contends that the evidence is legally and factually insufficient to sustain his conviction.  

A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).
 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.  In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Summary of the Evidence

When B.E., the complainant in this case, was very young, her parents divorced, and B.E.’s mother later married Appellant.  Thereafter, B.E. lived with her mother, Appellant, and Appellant’s son, J.P.  The family started out living in The Colony, Texas, before moving to Princeton, Texas, when B.E. was five years old.  The family then moved to Frisco, Texas, where B.E. finished kindergarten.  And finally, in May 1997, they moved into a house in Little Elm, Texas, which is located in Denton County.  

B.E., who was fourteen years old at the time of trial, testified that she first recalled Appellant “messing with [her]” when they were living in Princeton.  When asked what she meant by “messing with [her],” B.E. replied, “[H]e was taking my clothes off, and he was making me -- he was just making me give oral sex to him.”  B.E. testified further that Appellant continued “messing with [her]” after they moved into the house in Little Elm. 

Both B.E. and her mother testified that B.E. was aged six to nine years old when she lived in the house in Little Elm.  B.E. testified that during those years, when her mother was at work, Appellant would occasionally pick her up from school or day care and leave J.P. to be picked up later.
(footnote: 1)  B.E. testified that on these occasions, when she and Appellant would arrive home, he would tell her to come with him to his bedroom, and, once inside, he would lock the door. B.E. stated that Appellant would then take off his clothes, and he would either take off her clothes or she would take them off herself.  B.E. testified that Appellant would then lie down on the bed, have her lie on top of him in the opposite direction, and have her touch his penis with her hand or mouth.  She testified that while in this position, Appellant would also touch her hips and her vagina with his mouth and hands.  B.E. stated that this happened too many times to count.  

Additionally, B.E. testified that Appellant twice had her “sit on his penis,” such that his penis was touching her “butt.”  She stated that it hurt and she screamed.  B.E. stated that although there were times when J.P. would be home during these incidents, Appellant would “stick the back of a chair under the doorknob, or he’d tell him he would be grounded if he came out of the room.”  

Finally, both B.E. and her mother testified that Appellant kept vibrators in the nightstand beside the bed.  B.E. stated that sometimes Appellant would put one of the vibrators “on [her] vagina,” and once, “[h]e made [her] stick it up his butt.”  Moreover, B.E. testified that there was a television in the bedroom and that on more than one occasion, Appellant showed her “people having sex.”  B.E. stated that she once recognized Appellant and her mother as the people having sex on the television.  B.E.’s mother later confirmed that Appellant kept ten or more X-rated movies in the drawer by the television in the bedroom and that an adult movie was made of her and Appellant. 

In May 2000, when B.E. was nine years old, Appellant and B.E.’s mother divorced, and B.E. and her mother moved to a different house in Little Elm. 
 B.E.’s mother testified that B.E. sat on the floor and cried when she surprised her and showed her the new house.  That same day, B.E. tried to tell her mother what Appellant had been doing to her by writing her mother a letter in which she stated that Appellant had come in and dropped his towel in front of her.  However, B.E.’s mother thought that the incident was just an accident. 

When B.E. was in the sixth grade, she again tried to tell someone what had gone on between her and Appellant at the house in Little Elm.  B.E. testified that she began to cry when a group of her friends were talking about losing their virginity.  She stated that her friend, A.M., noticed that she was upset and asked her what was wrong.  B.E. testified that she told A.M. that Appellant had raped her.
(footnote: 3) 

Although B.E. was still scared of Appellant, she and A.M. decided to go to the school counselor.  The counselor testified that B.E. was hesitant to talk, so she asked B.E. if she would rather write down what her concern was.  B.E. wrote the counselor a note that stated, “He would rape me, and he said if I didn’t he would do something to me, or if I didn’t do it he would ground me.” The counselor testified that she asked B.E. to whom she was referring, and B.E. replied that she was referring to Appellant.  B.E. then told the counselor that she thought Appellant began sexually assaulting her around the age of six or seven and continued until she was age nine.  B.E. also told her that she had once told her mother about an incident when Appellant had opened his towel to her but that her mother did not believe her.   

The counselor testified that she ultimately referred the matter to Child Protective Services on November 1, 2002.  B.E.’s mother testified that she was notified by the Little Elm Police Department in November 2002, after which she took B.E. to the Children’s Advocacy Center in Lewisville. 

Peggy Hill, an employee of Child Protective Services who was working at the Children’s Advocacy Center, testified that on November 18, 2002, she conducted a forensic interview with B.E.  Ms. Hill testified that B.E. told her that Appellant “had put his mouth on her private part numerous times.  She also talked about [Appellant] having her put her mouth on his private part and a situation where he had also put his private part in her bottom.”  Further, B.E. told her that the incidents began when she was around seven or eight years old and continued until she was around eight or nine; that the incidents would occur when Appellant would pick her up early from school or day care while her mom was at work or away; that on one occasion Appellant had locked J.P. in his room to keep him from seeing them or getting in the way; that Appellant had shown her videotapes of people wearing no clothes and that, once, she saw a tape involving her mother and Appellant; that  she told her mother about an incident in which Appellant “opened his towel and showed her his private part,” but that her mother did not believe her; and, finally, that even though she thought she would get in trouble, she talked to the counselor about Appellant. 

The State also called Amy Cozad, Appellant’s ex-girlfriend, to testify at trial.  Ms. Cozad stated that she met Appellant in 2000 or 2001 and had a child with him on September 18, 2002.  When their daughter was approximately three months old, Appellant told Ms. Cozad about the criminal investigation relating to B.E. and B.E.’s mother.  Ms. Cozad testified that they subsequently began moving around quite a bit.  At some point, she became aware that Appellant possessed several pornographic movies.  She stated that he kept them in a red duffel bag; that he eventually burned them; and that he said that he was burning the movies because he did not want law enforcement to find them and think he was a pervert.  Moreover, Ms. Cozad testified that on one occasion, she overheard Appellant and his father talking about B.E. and her mother, and they said that it would be easier just to hire a hit man to kill them and take care of the problem.  Ms. Cozad later reported the conversation to the FBI and to the state sheriff’s department.   

Officer Joe Taylor, an officer in Tennessee, testified that he received a Teletype warrant for Appellant sent from Denton County, Texas, on October 29, 2004.  Officer Taylor confirmed the address of Appellant’s residence and arrived there with other officers at approximately 4:00 p.m.  Officer Taylor knocked on the front door, and one of Appellant’s friends answered.  Although Officer Taylor saw Appellant’s truck in the driveway and knew that Appellant had just talked to his son on the telephone, the friend repeatedly insisted that Appellant was not there.  One of the other officers then called Officer Taylor on his two-way phone and advised him that he had just captured Appellant attempting to flee out of the back door of the residence.  

Appellant testified on his own behalf at trial and denied having any kind of sexual activity with B.E.  He further stated that he had never picked up B.E. from school or day care without also picking up his son; that he had never locked his son in his room; that he had never worn a towel in front of B.E. or exposed himself to her; that a movie had been made of him and B.E.’s mother having sex, but that he did not show it, or any other pornographic movie, to B.E.;
 that he had burned the pornographic movies because he was no longer interested in them; and that he had never talked about killing B.E. or her mother.  Appellant testified that he ultimately found out about the allegations against him around December 2002.  Subsequently, he moved to Arkansas, and later, he took his daughter and went to Tennessee, where he remained until his arrest on October 29, 2004. 

C. Discussion

Appellant was indicted on one count of aggravated sexual assault by intentionally or knowingly causing the anus of the victim, a child younger than fourteen years old who was not Appellant’s spouse, to contact Appellant’s sexual organ, 
see 
Tex. Penal Code Ann.
 § 22.021(a)(1)(B)(iv), (2)(B) (Vernon Supp. 2006); one count of aggravated sexual assault by intentionally or knowingly causing the mouth of the victim, a child younger than fourteen years old who was not Appellant’s spouse, to contact Appellant’s sexual organ, 
see id. 
§ 22.021(a)(1)(B)(v), (2)(B); and one count of aggravated sexual assault by intentionally or knowingly causing the sexual organ of the victim, a child younger than fourteen years old who was not Appellant’s spouse, to contact Appellant’s mouth, 
see id. 
§ 22.021(a)(1)(B)(iii), (2)(B)
. 
 The offenses were alleged to have occurred in Denton County on or about June 1, 1998, September 1, 1998, and June 1, 1999, respectively.
(footnote: 4)  

Viewed in the light most favorable to the verdict, the evidence shows that B.E. was ages six to nine years old when she lived in the house in Little Elm, which was located in Denton County; that on many occasions during those years, Appellant would lie down on his bed and make B.E. lie on top of him in the opposite direction; that while in this position, Appellant would make B.E. touch his penis with her hand or mouth while Appellant would touch her hips and genitals with his hands and mouth; and that Appellant twice had her “sit on his penis,” such that his penis was touching her “butt,” or, as she explained to Ms. Hill, Appellant put his “private part” in her “bottom.”
(footnote: 5) 
  

Appellant argues that the evidence is insufficient because “[t]he testimony adduced at trial was inconsistent as to the circumstances surrounding the allegations and specifically essential elements of the allegations against the Appellant.”  In particular, Appellant refers to testimony from several witnesses, which provides varying age ranges for when B.E. was assaulted.  However, when performing a legal sufficiency review, we must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
  
The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  We may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We therefore hold that the evidence was legally sufficient to support the verdict.  
 

Likewise, considering the evidence in a neutral light, we hold that the evidence was factually sufficient.  As previously stated, in performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Zuniga
, 144 S.W.3d at 481; 
Cain
, 958 S.W.2d at 407.  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  Mindful of the proper standard, based on our review of all the evidence in a neutral light, we cannot say that the evidence supporting the verdicts, considered alone, is too weak to support the finding of guilt beyond a reasonable doubt, nor can we say that the evidence contradicting the verdict of guilt is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id.
 at 484-85.  We therefore overrule Appellant’s first point.

III. Extraneous Bad Acts Evidence

In his second point, Appellant contends that the trial court erred in allowing evidence of several extraneous offenses whose probative value was outweighed by the danger of prejudice to him.  Specifically, Appellant points to the following extraneous offense evidence that he claims was improperly admitted at trial:  (1) evidence that Appellant and his family members instructed a material witness not to come to court
(footnote: 6); (2) evidence that Appellant destroyed his pornographic movies so that law enforcement would not find them; (3) evidence that Appellant attempted to evade law enforcement by moving throughout several states after he learned that he was under criminal investigation; and (4) evidence that Appellant and his father considered hiring a hit man to kill B.E. and her mother. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P. 
33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P. 
33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  With the exception of the evidence that Appellant and his father considered hiring a hit man to kill B.E. and her mother, Appellant did not object at trial to the extraneous offense evidence of which he now complains.  We hold that Appellant has forfeited his complaints as to evidence that Appellant and his family members instructed a material witness not to come to court, evidence that Appellant destroyed his pornographic movies so that law enforcement would not find them, and evidence that Appellant attempted to evade law enforcement by moving throughout several states after he learned that he was under criminal investigation.

We now turn to the evidence that Appellant and his father considered hiring a hit man to kill B.E. and her mother.  Texas Rule of Evidence 403 provides, “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .” 
Tex. R. Evid. 
403.  The trial court’s ruling on admissibility of evidence under rule 403 is reviewed by an abuse of discretion standard.  
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Therefore, as long as the trial court’s ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede.  
Id.

Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial.  
See id. 
at 389.  
Santellan v. State
 restated the factors discussed in 
Montgomery 
that should go into the balancing test as follows:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable--a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;     

(2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”;

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; 

(4) the force of the proponent’s need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.  

939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted).

In the present case, the contested evidence does have probative value.  As the State points out, the evidence that Appellant and his father considered hiring a hit man to kill B.E. and her mother is directly relevant to Appellant’s consciousness of guilt.  
See Torres v. State
, 794 S.W.2d 596, 599 (Tex. App.—Austin 1990, no pet.) (holding evidence that appellant possessed a gun and made threats to kill the victim’s family was admissible to show an effort on his part to suppress and destroy evidence against him and to explain why the victim did not make an immediate outcry).
  
The only question is whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.  Appellant does not suggest any specific prejudicial effect arising from the admission of the evidence, but only argues broadly that the evidence offered by the State was unfairly prejudicial. 
 W
e hold that the trial court did not abuse its discretion in admitting evidence that Appellant and his father considered hiring a hit man to kill B.E. and her mother.  We overrule Appellant’s second point.

IV. Ineffective Assistance of Counsel

In his third point, Appellant contends that his trial counsel rendered ineffective assistance by failing to seek notice of admission of any extraneous acts prior to trial. 

To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that his counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Thompson
, 9 S.W.3d at 813).  

Here, the record does not reveal trial counsel’s strategy in deciding not to file the pretrial request.  
See Thompson
, 9 S.W.3d at 814; 
Brown v. State
, 155 S.W.3d 625, 631 (Tex. App.—Fort Worth 2004, pet. ref’d) (“This court will not ‘reverse a conviction on ineffective assistance of counsel grounds when counsel’s actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel’s decisions.’”).  Appellant filed a motion for new trial, but no motion for new trial hearing was held to interrogate trial counsel regarding his strategy. 
 
Furthermore, the failure to file pretrial motions is not categorically deemed ineffective assistance of counsel.  
Miranda v. State
, 993 S.W.2d 323, 327 (Tex. App.—Austin 1999, no pet.).  Therefore, Appellant’s ineffective assistance claims are better raised within the framework of a post-conviction writ of habeas corpus under article 11.07 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann. 
art. 11.07 (Vernon 2005); 
see Rylander v. State
, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (“[T]he record on direct appeal will generally ‘not be sufficient to show that counsel’s representation was so deficient as to meet the first part of the 
Strickland
 standard’ as ‘[t]he reasonableness of counsel’s choices often involves facts that do not appear in the appellate record.’”); 
see also Bone v. State
, 77 S.W.3d 828, 837 n.30 (Tex. Crim. App. 2002) (“This resolution in no way affects appellant’s entitlement to re-urge this or other appropriate constitutional complaints on a writ of habeas corpus.”).  We overrule Appellant’s third point.

V. Scope of Questioning During Voir Dire

In his fourth point, Appellant contends that the trial court erred in denying him the opportunity to ask offense-specific questions during voir dire.  During voir dire, the following exchange took place:

[Defense Counsel]:  Let’s talk about an aggravated sexual assault of a child.  What they’ve got to prove in three counts is that Jimmy over here either put his sex organ in the mouth --

[Prosecutor]:  Your Honor, I’m going to object to counsel voir-diring on the facts of the case on this particular individual.

THE COURT:  I don’t think you can get into the specific allegations in this case.

[Defense Counsel]:  May I talk about the indictment, Judge?

THE COURT:  I don’t think you can get into the specific allegations in this case, so, no, you can’t make reference to the allegations in the indictment.  You can talk in general terms of what the elements of sexual assault or aggravated sexual assault are, but not the ones in this case. 

[Defense Counsel]:  All right.  What they have to prove for aggravated sexual assault, you’ve got to have a child under 14 or you’ve got to use a weapon, some kind of force, okay?  So if no force, we’re talking about a child under 14.  You’ve got to prove that a person had sexual contact, which is either putting your sexual organ in somebody’s mouth, vagina, or anus, or getting someone to put their mouth on your sexual organ or anus.  It’s not good stuff, is it? 

The trial court has broad discretion over the process of selecting a jury and may impose reasonable restrictions on the voir dire examination.  
Barajas v. State
, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); 
Allridge v. State
, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988), 
cert. denied
, 489 U.S. 1040 (1989).  Decision as to the propriety of a particular question on voir dire examination is left to the trial judge’s discretion and only an abuse of such discretion will call for reversal on appeal.  
Allridge
, 762 S.W.2d at 167.  A trial court’s discretion is abused only when a proper question about a proper area of inquiry is prohibited.  
Barajas
, 93 S.W.3d at 38.

Voir dire may not include details of a particular offense.
(footnote: 7)  
See White v. State
, 629 S.W.2d 701, 706 (Tex. Crim. App. 1981), 
cert. denied
, 456 U.S. 938 (1982) (holding trial court did not err in refusing to let the appellant ask a hypothetical question based on an accurate statement of what the State’s case would be); 
Aquino
, 710 S.W.2d at 752
 (holding trial court did not abuse its discretion by refusing to allow the accused to ask a prospective juror a question based on facts particular to his case).  Moreover, immediately after the trial court made its ruling, Appellant was allowed to apprise the prospective jurors in general terms of the elements of the offense as alleged in the indictment.  
Therefore, we hold that the trial court did not abuse its discretion in denying Appellant the opportunity to ask questions involving the specific allegations in this case.
 
 
We overrule Appellant’s fourth point.     

VI. 
Brady
 Violation

In his fifth point, Appellant contends that the trial court erred in denying his motion for mistrial because the prosecution failed to provide the defense with exculpatory material prior to trial pursuant to 
Brady v. Maryland
, 373 U.S. 83, 83 S. Ct. 1194 (1963).  Specifically, Appellant argues that the prosecution was required to disclose that B.E. had been hospitalized in an inpatient psychiatric hospital. 

To find reversible error under 
Brady
, a defendant must show that:  (1) the State failed to disclose evidence, regardless of the prosecution’s good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.  
Hampton v. State
, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).  Favorable evidence is any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal and includes both exculpatory and impeachment evidence.  
Harm v. State
, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006).  Exculpatory evidence may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence.  
Id.  
Materiality is determined by examining the alleged error in the context of the entire record and overall strength of the State’s case.  
Id.
 at 409.

Appellant argues that “[t]he fact that [B.E.] underwent psychiatric treatment is a determinant of her ability to distinguish fact from fantasy and her credibility as a witness.”  However, as the State points out, the evidence regarding B.E.’s psychiatric treatment appears to be unfavorable, rather than favorable, to Appellant.  
See id.
 at 408.
  The evidence supported that B.E. had seen counselors and had gone into the psychiatric hospital after her outcry and as a result of the alleged offenses.
(footnote: 8)  Furthermore, Appellant has not shown that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.  The State’s case in this instance rested in large part on the testimony of B.E., but B.E.’s mother and Ms. Cozad gave testimony that corroborated B.E.’s version of the events.  
See id.
 at 409.

After examining the entire record, we hold that the trial court did not abuse its discretion in denying Appellant’s motion for mistrial.  The fact that B.E. was hospitalized in an inpatient psychiatric hospital was not favorable to Appellant, nor was there any evidence to suggest that the result of the proceedings against Appellant would have been different if the information had been disclosed to Appellant prior to trial.  We overrule Appellant’s fifth point.

VII. Conclusion

Having overruled all of Appellant’s points, we affirm the judgment of the trial court.  
See
 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL F: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 17, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

1:
B.E.’s mother testified that she worked a lot and that there were times when Appellant was the one responsible for picking up the kids and getting them home. 

3:
3
A.M. testified that B.E. told her that Appellant had raped her when she was from about ages four through nine.  B.E. told her that Appellant would tell her mother it was okay if she wanted to go out, and when she did, that was when he would do it. 

4:
See
 
Sledge v. State
, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) (“It is well settled that the ‘on or about’ language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period.”).

5:
See Clark v. State
, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977) (holding victim’s testimony sufficient to support indecency with a child conviction when, despite using “unsophisticated language” to describe the part of the body touched, she sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of the controlling statute); 
Mallet v. State
, 9 S.W.3d 856, 864 (Tex. App.—Fort Worth 2000, no pet.) (holding child victim’s testimony sufficient to support conviction despite lack of technical knowledge in accurately describing prohibited part of her body).

6:
The day before Ms. Cozad testified, the trial court had ordered Appellant not to have any contact with her.  Nevertheless, Ms. Cozad testified that Appellant had contacted her by telephone the night before she testified and had asked her to go to his aunt’s house rather than come to court and testify. 

7:
Nevertheless, 
Appellant argues that questions similar to those in 
Abron v. State
, 523 S.W.2d 405 (Tex. Crim. App. 1975), and 
Hernandez v. State
, 508 S.W.2d 853 (Tex. Crim. App. 1974), would have been proper because they would have been narrowly tailored to an issue relevant to the case.  However, Appellant acknowledges that the record is “void” as to what questions trial counsel would have asked or for what purpose.  Without a record of the specific questions Appellant intended to ask, we are unable to address his argument.  
See 
Caldwell v. State
, 818 S.W.2d 790, 793-94 (Tex. Crim. App. 1991) (holding that one preserves his complaint about being unable to ask questions during voir dire by presenting the specific question to the trial court and obtaining an adverse ruling), 
overruled on other grounds by Castillo v. State
, 913 S.W.2d 529 (Tex. Crim. App. 1995);
 Aquino v. State
, 710 S.W.2d 747, 752 (Tex. App.—Houston [14th
 Dist.] 1986, pet. ref’d) (holding that error was waived since the defendant failed to make a bill of exceptions as to the questions he wished to pose to the prospective juror).
 

8:
During the punishment phase of the trial, B.E.’s mother testified that B.E. has had extensive counseling as a result of being sexually assaulted.  Specifically, she testified that the worst day of her life “was seeing my daughter locked up in a psychiatric hospital from trying to commit suicide.”  On cross-examination, defense counsel revisited the issue and learned that B.E. had been in the hospital for one week.